ORDERED.

**Dated:  July 02, 2026**

_____
Luis E. Rivera II
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN TOOL & MOLD, INC, *et al.*[1] | Case No. 8:26-bk-04159-LER<br>Jointly Administered |
| Debtors. | |

/

### MEMORANDUM OPINION AND ORDER APPROVING DEBTORS' EMERGENCY APPLICATION TO EMPLOY <u>OSCHER CONSULTING, PLLC AS INDEPENDENT DIRECTOR</u>

THIS CASE came on for emergency hearing on July 7, 2026, on the

*Notice of Appointment of Independent Director for Each Debtor and Emergency*

*Application of Debtors and Debtors-in-Possession for the Entry of an Order*

*Authorizing Debtors and Debtors-in-Possession to Employ, Retain and*

---

[1] The Debtors in these chapter 11 cases are as follows: American Tool & Mold, Inc., USA Manufacturing Solutions, LLC (Case No. 8:26-bk-04149), ATM Investment Property 1700, LLC (Case No. 8:26-bk-04148), American Tool & Mold, LLC (Case No. 8:26-bk-04147), American Technical Molding, Inc. (Case No. 8:26-bk-04146), and American Tech Medical, Inc. (Case No. 8:26-bk-04161).

*Compensate Oscher Consulting, PLLC as Independent Director* (the "Application") (Doc. No. 177) filed by American Tool & Mold, Inc., *et al.* (the "Debtors"), and the objections filed by EverBank, N.A. ("EverBank") and the United States Trustee (Doc. Nos. 190 & 192).

The Court will overrule the objections and approve the appointment of Lisl Unterholzner and Oscher Consulting, PLLC (collectively, "Oscher Consulting") as the Debtors' independent director and manager under Sections 327(a) and 363(b). These are the Court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

## Background

The Debtors provide mold manufacturing and engineering services, supplying tooling to clients worldwide.[2] EverBank is a creditor of the Debtors arising from two loans made in July 2025: a loan of $13,246,000.00 and a working line of credit of $4,000,000.00 (collectively, the "EverBank Loan"), both secured by all of the Debtors' assets (the "EverBank Collateral").[3]

The Debtors defaulted on the loans right away and EverBank filed an action against the Debtors in the Circuit Court of the Sixth Judicial Circuit in

---

[2] Doc. No. 10, at 1.
[3] *Id.* at 3.

and for Pinellas County, Florida,[4] seeking to enforce its mortgage and security agreements (the "Receivership Case").[5] In short order, the State Court appointed a receiver over the EverBank Collateral, effectively dispossessing the Debtors' pre-petition management.[6]

Right before the filing of these cases, the Debtors appointed Joseph Baum as Chief Restructuring Officer ("CRO").[7] Then, on May 15, 2026, the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[8] The receiver thereafter returned possession of the EverBank Collateral to the Debtors, and the Debtors manage and operate their properties and businesses as debtors in possession.

But, on May 18, 2026, EverBank filed its *Emergency Motion for Appointment of Chapter 11 Trustee* (the "Motion to Appoint Trustee") (Doc. No. 18), which asserts cause exists to appoint a trustee, including gross mismanagement, financial collapse, and loss of operational control.[9] The Motion to Appoint Trustee is scheduled for trial on July 8, 2026.[10]

---

[4] EverBank, N.A. vs. ATM Investment Property 1700 LLC, et al., Case Number 25-006757-CI. (Filed Nov. 26, 2025).

[5] *Id.* at 1-2, 4.

[6] *Id.* at 4.

[7] *See Verified Declaration of Joseph Baum* (Doc. No. 58, at 16-29).

[8] 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code" or the "Code").  Unless otherwise indicated, all statutory references are to the Bankruptcy Code.

[9] Doc. No. 18, at 3.

[10] *See Order Setting Trial and Establishing Deadlines on Emergency Motion for Appointment of Chapter 11 Trustee* (Doc. No. 80).

Now, the Debtors seek authority under Sections 363(b) and 327(a) to employ, retain, and compensate Oscher Consulting, as the Debtors' independent director effective June 24, 2026. On that date, the Debtors' sole shareholder and member, Emilia Giannakopoulos, appointed Ms. Unterholzner to the Board as the Independent Director; assigned all her rights and authority as a voting member of the Company to Ms. Unterholzner; and resigned as a voting member of the companies.[11]

## Analysis

The equity of the Debtors has chosen to replace Ms. Giannakopoulos as the sole director and manager with Ms. Unterholzner, who will serve as the sole and independent director of each of the corporate Debtors and as the sole and independent manager of each of the limited liability company Debtors. This action was taken under the authority of the corporations' bylaws and the limited liability companies' operating agreements.

Because Oscher Consulting is a "professional person," the Debtors seek approval of this appointment under Sections 327(a) and 363(b). Both the United States Trustee and EverBank object to the appointment of Oscher Consulting, albeit for different reasons.

---

[11] Nevertheless, Ms. Giannakopoulos intends to continue her employment without compensation and remain entitled to reimbursement for out-of-pocket expenses to the extent approved by the Debtors' CRO, to whom she reports, with her duties, presently limited to sales, specified in writing by the CRO. Doc. No. 177, at 2.

EverBank objects to the appointment of Oscher Consulting because, as they see it, there is "no real need [for] Oscher's services, as required by Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014."[12] Instead, EverBank suggests, this is but the latest in a series of litigation tactics that "prioritize optics over genuine structural reform designed to create the appearance of independence without its reality, while insulating Emilia Giannakopoulos and other insiders from any meaningful accountability."[13]

While sharing similar concerns about Oscher Consulting's independence, the United States Trustee principally objects on the grounds that "the sole means for removing a debtor-in-possession under the Bankruptcy Code is to appoint a chapter 11 trustee."[14]

Corporations and limited liability companies are creatures of state law. Here, the Debtors are Florida corporations and limited liability companies. And, under both the Florida Business Corporations Act, Fla. Stat. ch. 607, and the Florida Revised Limited Liability Company Act, Fla. Stat. ch. 605, it is the equity of the corporation or company, i.e. the shareholders or members, who

---

[12] Doc. No. 190, at 2.
[13] *Id.*
[14] Doc. No. 192, at 1.

are empowered to elect the company's directors or managers.[15] It is those directors or managers who then select a company's officers.[16]

A nonindividual debtor-in-possession's right to change their management structure post-petition is both an appropriate exercise of their governance rights under Florida law[17] and permissible under the Bankruptcy Code.[18] Aside from the appointment of a chapter 11 trustee, nothing in chapter 11 precludes a nonindividual debtor-in-possession from changing directors or managers during the pendency of a case.[19] Thus, bankruptcy courts routinely approve a debtor's employment of independent directors, corporate restructuring officers, restructuring advisors, and restructuring professionals under Sections 363(b) and 327(a).[20]

---

[15] *See, e.g.,* Fla. Stat. § 607.0803 (requiring that directors be elected at the first annual shareholders' meeting and at each annual shareholders' meeting thereafter); Fla. Stat. § 605.04072 (providing that managers may be chosen at any time by the consent of the member or members).

[16] Fla. Stat. § 607.08401(1) ("A corporation shall have the officers described in its bylaws or appointed by the board of directors in accordance with the bylaws"); Fla. Stat. § 605.0109 (proving a limited liability company has the right to "appoint officers, directors, employees").

[17] S*upra* note 16.

[18] *See In re K.G. IM, LLC*, 620 B.R. 469, 482 (Bankr. S.D.N.Y. 2020)

[19] *See In re Johns-Manville Corp.*, 801 F.2d 60, 63 (2d Cir. 1986) (holding that a chapter 11 proceeding did not prevent the right of shareholders to compel a shareholders' meeting for the purposes of electing a new board of directors); *The 1031 Tax Grp.*, LLC, 374 B.R. 78, 89 n. 11 (Bankr. S.D.N.Y. 2007) ("nothing in the Bankruptcy Code precludes a debtor in possession from making necessary changes to its management while in bankruptcy").

[20] *In re Blue Stone Real Est., Const. & Dev. Corp.*, 392 B.R. 897, 903 n. 9 (Bankr. M.D. Fla. 2008). *See also* Kevin J. Carey, et al., *D&O Fiduciary Duties for Financially Troubled Companies: What to Do and What Not to Do*, 101017 ABI-CLE 33 (Oct. 10, 2017) (discussing appointment of CROs and independent directors in chapter 11 cases).

Section 363(b)(1) provides that a debtor "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."[21] This would include a change of a nonindividual debtor-in-possession's directors or managers during the pendency of a case.[22] And, in doing go, bankruptcy courts apply the "sound business purpose" test to evaluate this action.[23]

Where the proposed independent director and manager is a "professional person" who will be employed by the debtor, then approval of the employment should also be had under Section 327(a).[24] Under section 327(a), a chapter 11 debtor may employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons" to represent or assist the debtor in carrying out its duties.[25]

Here, the Court is satisfied that the employment of Oscher Consulting as the Debtors' independent director and manager is a sound exercise of the Debtor's business judgment. As in *In re Blue Stone Real Est., Const. & Dev.*

---

[21] 11 U.S.C. § 363(b)(1).

[22] *See In re Johns-Manville Corp.*, 801 F.2d at 64 (noting that shareholders' right to govern their corporation is a "prerogative ordinarily uncompromised by reorganization" and that "the shareholders' natural wish to participate in this matter of corporate governance be respected"). *See also* Kevin J. Carey, et al., *D&O Fiduciary Duties for Financially Troubled Companies: What to Do and What Not to Do*, 101017 ABI-CLE 33 (Oct. 10, 2017) (noting that bankruptcy courts have approved the appointment of a CRO pursuant to sections 105(a) and 363(b)(1)).

[23] *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).

[24] *In re Blue Stone Real Est.,* 392 B.R. at 907.

[25] 11 U.S.C. §327(a).

*Corp.*, EverBank's filing of the Motion to Appoint Trustee triggered a voluntary response that may cure the problems noted in that motion.[26] If an immediate change in management is needed, the Debtors' equity should not be prevented from taking immediate action and the Court should not be prevented from approving immediate action.[27] The Motion to Appoint Trustee involves disputes of fact that require the parties to be given the usual elements of due process, such as discovery and a trial, and this proposal before the Court presents an opportunity to address the Debtors' problems right away.[28] And it is in the best interests of the Debtors' estates, creditors and equity holders to authorize the Debtors to appoint Oscher Consulting as the Debtors' independent director and manager.

In doing so, for the reasons articulated by Judge McEwen in *In re Blue Stone Real Est., Const. & Dev. Corp.*,[29] the Court rejects the United States Trustee's position that a proposed change of management following the filing of a still pending motion to appoint a Chapter 11 trustee is proscribed by section 1104(a). The approval of a change of a nonindividual debtor-in-possession's directors or managers during the pendency of a case – a change

---

[26] *In re Blue Stone Real Est.,* 392 B.R. at 906 (motion to appoint trustee triggered a voluntary response likely to cure problems raised in motion).

[27] *Id.*

[28] *Id.*

[29] *Id.* at 905–06.

permitted by state law – is not prohibited by Section 1104(a).[30] And, in the same vein, a post-petition change of a debtor-in-possession's directors or managers is not dispositive of the Motion to Appoint Trustee.[31]

The Court is also satisfied that Oscher Consulting is a disinterested person eligible for employment under Section 327(a).[32] No one has suggested the contrary. Still, the Court specifically finds Oscher Consulting is well qualified to serve as the Debtors' independent director and manager, and that Oscher Consulting and Ms. Unterholzner are independent of the Debtors and have had no prior dealings with the Debtors or Ms. Giannakopoulos.

That is not to say that EverBank and the U.S. Trustee were mistaken to scrutinize Oscher Consulting's independence. We must be cautious of efforts to create the appearance of new management independence without its reality.[33] Yet those concerns can be allayed where, as here, Ms. Giannakopoulos consents to Oscher Consulting's appointment as the Debtors' independent

---

[30]*See In the Matter of Gaslight Club, Inc.,* 782 F.2d 767 (7th Cir.1986) (approving replacement of debtor's president and majority shareholder with individual exercising debtor in possession powers, without appointing trustee, but where the individual who had been replaced consented).

[31] *In re Blue Stone Real Est.,* 392 B.R.at 903 n. 9.

[32] *Id. at* 901.

[33] *See In re Woodlawn Cmty. Dev. Corp.*, 613 B.R. 671, 686 (N.D. Ill. 2020) (management change was insufficient to preclude trustee appointment when former bad actor "remained involved in the organization as a volunteer" and relative remained in management role undermining genuine independence); *In re Marshall,* 653 B.R. 509, 516-21 (Bankr. E.D.N.Y. 2023) (court identified "adequate safeguards" to accompany management change: "changing the office locks and not providing Debtor with a key, opening new financial accounts, revoking Debtor's signatory authority on existing accounts" and scheduled an evidentiary hearing to determine whether the bad actor "has, in fact, been removed from management).

director and manager, is ready to disassociate herself from any managerial functions she served at the commencement of the case, and is willing to reasonably cooperate on an as requested basis without compensation should Oscher Consulting or Mr. Baum determine that her assistance is needed.[34] And any remaining concerns can be obviated by an express requirement that Ms. Giannakopoulos' duties and responsibilities be limited to those that Ms. Unterholzner or Ms. Baum direct her to perform, including, but not limited to, cooperating in the investigation into the assets, liabilities and affairs of the debtors.[35]

In sum, equity holders of a corporate debtor-in-possession may change the debtor's management.[36] If a motion to appoint a trustee has been made, however, then section 1104(a)(1) compels the Court to "examine the integrity of the new management."[37] The Court has done that and found Ms. Unterholzner and Oscher Consulting sound. It is the Court's primary obligation to ensure that the Debtors' estates are operated and administered for the benefit of creditors and equity interest holders consistent with the

---

[34] *See In the Matter of Gaslight Club,* 782 at 771.

[35] *See In re Marshall,* 653 B.R. at 521-522.

[36] *See The 1031 Tax Grp.,* LLC, 374 B.R. 78, 89 n. 11 (Bankr. S.D.N.Y. 2007) ("nothing in the Bankruptcy Code precludes a debtor in possession from making necessary changes to its management while in bankruptcy").

[37] *In re Blue Stone Real Est.,* 392 B.R. at 905 (citing *1031 Tax Group,* 374 B.R. at 89 n. 11).

Bankruptcy Code,[38] and the Court will consider the Trustee Motion in due course in any event.

Accordingly, it is

**ORDERED**

1.      The Debtors' *Emergency Application to Employ Oscher Consulting, PLLC as Independent Director* is **APPROVED** as set forth herein.

2.      The Debtors are authorized to employ Lisl Unterholzner and Oscher Consulting, PLLC as the Debtors' independent director and manager on the terms described in the Application as modified by this Order.

3.      Ms. Giannakopoulos' duties and responsibilities are limited to those that Ms. Unterholzner or Mr. Baum direct Ms. Giannakopoulos to perform, including, but not limited to, cooperating in Oscher Consulting's investigation into the assets, liabilities, and affairs of the Debtors and advising on marketing of the business of the Debtors.

4.      Compensation will be determined later under 11 U.S.C. § 330. No payment may be made to Lisl Unterholzner and Oscher Consulting, PLLC absent submission of an application for compensation and Court approval thereof.

Stuart J. Levine is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this Order.

---

[38] *Id.* at 906.