ORDERED.

**Dated:  July 07, 2026**

_____
Luis E. Rivera II
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN TOOL & MOLD, INC, *et al.*[1] | Case No. 8:26-bk-04159 Jointly Administered |
| Debtors. | |

_____/

**MEMORANDUM OPINION ON**
**EMERGENCY MOTION OF DEBTORS FOR PROTECTIVE ORDER**

THIS CASE came on for hearing on June 23, 2026, and June 25, 2026 to

consider the *Emergency Motion of Debtors for Protective Order* ("the **Motion**

**for Protective Order**") (Doc. No. 149) filed by American Tool & Mold, Inc, et

al. (the "**Debtors**"), and the *Objection to Emergency Motion of Debtors for*

---

[1] The Debtors in these chapter 11 cases are as follows:  American Tool & Mold, Inc., USA Manufacturing Solutions, LLC (Case No. 8:26-bk-04149), ATM Investment Property 1700, LLC (Case No. 8:26-bk-04148), American Tool & Mold, LLC (Case No. 8:26-bk-04147), American Technical Molding, Inc. (Case No. 8:26-bk-04146), and American Tech Medical, Inc. (Case No. 8:26-bk-04161).

*Protective Order and for Related Relief* (Doc. No. 163) (the "**Objection**") filed by EverBank, N.A. ("**EverBank**").

The Motion for Protective Order sought an order forbidding discovery related to EverBank's *Emergency Motion for Appointment of a Chapter 11 Trustee* (Doc. No. 18) (the "**Motion to Appoint Trustee**") from the Debtors' customers because "Demanding discovery from the Debtors' customers is a transparent attempt to sabotage and destroy Debtors' business."[2] The Motion for Protective Order also sought to "[l]imit the July 9, 2026 trial on the [Motion to Appoint Trustee] to the issue of whether the CRO has operated the Debtors in accordance with the Cash Flow budget."[3]

EverBank argued the breadth of the inquiry under Section 1104(a)(2) of the Bankruptcy Code[4] – whether the appointment of a trustee is "in the interests of creditors, any equity security holders, and other interests of the estate" – requires it "be permitted to conduct full discovery—including into prepetition events and customer, vendor, and employee relationships."[5]

---

[2] Doc. No. 149, at 2.
[3] *Id.* at 3.
[4] 11 U.S.C. §§ 101 – 1532 (the "**Bankruptcy Code**" or the "**Code**"). Unless otherwise indicated, all statutory references are to the Bankruptcy Code.
[5] Doc. No. 163, at 2.

The Court entered an order on June 29, 2026, granting the Motion for Protective Order in part[6] and issues this Memorandum Opinion setting forth and supplementing the Court's oral ruling.

## FACTS AND PROCEDURAL HISTORY

A review of the Debtors' background and the context of the discovery requests is in order. The Court begins with the Debtor's operations and reasons for filing bankruptcy, discusses EverBank's Motion to Appoint Trustee, and, finally, addresses the related discovery dispute before the Court.

### A.     The Debtor's operations and reasons for filing this case

The Debtors provide mold manufacturing and engineering services, supplying tooling to clients worldwide.[7] EverBank is a creditor of the Debtors arising from two loans made in July 2025: a loan of $13,246,000.00 and a working line of credit of $4,000,000.00, both secured by all the Debtors' assets (the "**EverBank Collateral**").[8]

The Debtors defaulted on the loans right away and EverBank filed an action against the Debtors in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida,[9] seeking to enforce its mortgage and security

---

[6] *Order Granting In Part Emergency Motion of Debtors for Protective Order* (Doc. No. 185).

[7] Doc. No. 10, at 1.

[8] *Id.* at 3.

[9] *EverBank, N.A. vs. ATM Investment Property 1700 LLC, et al.*, Case Number 25-006757-CI. (Filed Nov. 26, 2025).

agreements.[10] In short order, the State Court appointed a receiver over the EverBank Collateral, effectively dispossessing the Debtors' pre-petition management.[11]

Right before the filing of these cases, the Debtors appointed Joseph Baum as Chief Restructuring Officer ("**CRO**").[12] Then, on May 15, 2026, the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[13] The receiver thereafter returned possession of the EverBank Collateral to the Debtors, and the Debtors manage and operate their properties and businesses as debtors in possession.

### B.    EverBank's Motion to Appoint a Chapter 11 Trustee

On May 18, 2026, EverBank filed its *Emergency Motion for Appointment of Chapter 11 Trustee* (the "Motion to Appoint Trustee") (Doc. No. 18), which asserts cause exists to appoint a trustee, including gross mismanagement, financial collapse, and loss of operational control.[14] Section 1104(a) provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> > (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the

---

[10] *Id.* at 1-2, 4.

[11] *Id.* at 4.

[12] *See Verified Declaration of Joseph Baum* (Doc. No. 58, at 16-29).

[13] 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code" or the "Code").  Unless otherwise indicated, all statutory references are to the Bankruptcy Code.

[14] Doc. No. 18, at 3.

case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

EverBank argues cause exists to order the appointment of a trustee under Section 1104(a)(1) because the Debtors have engaged in dishonesty, concealment, and the improper diversion of estate cash prior to the petition date, (2) the Debtors' estate has been grossly mismanaged and lacks an ability to operate absent extraordinary third-party intervention, (3) prior management failed to discharge fiduciary duties resulting in the loss of credibility and creditor confidence, and (4) the Debtors' estate lacks operational control and governance, and such uncertainty warrants a trustee to avoid a functional vacuum of authority.[15]

EverBank also argues that the court should order the appointment of a trustee under Section 1104(a)(2) as being in the best interest of creditors and other parties in interest because "(1) the Debtors lack trustworthiness, (2) the Debtors past and present performance hinders the prospect of rehabilitation, (3) there is a lack of trustworthiness as to Ms. Giannakopoulos, and (4) the

---

[15] *Id.* at 15-16.

benefits derived by the appointment of a trustee weighs in favor of such an appointment when balanced against the cost of the appointment."[16]

The Debtors respond that, applying the plain language of Section 1104(a), there is no basis for displacing current management.[17] The Debtors highlight that the CRO controls the Debtors' postpetition operations. And, relying on Judge McEwen's decision in *In re Blue Stone Real Est., Const. & Dev. Corp.*,[18] there is no reason for the "extraordinary remedy" of appointing a trustee because the alleged misconduct predates the appointment of the CRO, and EverBank does not allege that the CRO has failed to perform his duties.[19]

A trial on the Motion to Appoint Trustee is scheduled for July 8, 2026.

### C.     The Debtor's Emergency Motion for Protective Order

The Debtors' *Emergency Motion for Protective Order* seeks to forbid discovery directed at any period prior to the filing of the petition or directed at the Debtors' customers.[20] The Debtors assert that events prior to the bankruptcy filing are not relevant because they have been operating under the management of a Court-approved CRO.[21] The Debtors also argue EverBank

---

[16] *Id.* at 19-20.
[17] Doc. No. 151, at 4.
[18] 392 B.R. 897 (Bankr. M.D. Fla. 2008).
[19] Doc. No. 151, at 4.
[20] Doc. No. 149, at 2-3.
[21] *Id.* at 2.

should be forbidden from taking discovery from their customers because the customer relationships are vital to their business and there has been no allegation of loss of customers or cancellation of orders since the CRO began operating the Debtors' business.[22]

Citing *In re The 1031 Tax Grp., LLC*,[23] EverBank responds that discovery regarding past mismanagement is relevant to issue of the appointment of a chapter 11 trustee because "the Court must be 'satisfied that the current management is free from the taint of prior management'" where, as here, "the alleged misconduct concerns the same insider-controlled governance structure that selected the CRO, funded the engagement, commenced the cases, and continues to shape the debtor's chapter 11 strategy."[24] EverBank also argues that alleged commingling and diversion of customer funds and deterioration of customer relationships make discovery requests to customers necessary and directly relevant to the need to appoint a trustee under Section 1104(a).[25]

The Court held an initial preliminary hearing on the Motion for Protective Order on June 23, 2026, where the Court ruled discovery could be had on the CRO and the Debtor for the period from January 1, 2024, to the

---

[22] *Id.*

[23] 374 B.R. 78 (Bankr. S.D.N.Y. 2007).

[24] Doc. No. 163, at 5 (quoting *In re The 1031 Tax Grp., LLC*, 374 B.R. at 86).

[25] *Id.* at 8-9.

present.  The Court held a subsequent preliminary hearing on the Motion for Protective Order on June 25, 2026, where the Court determined that, applying Fed. R. Civ. P. 26(b)(1), the burden of the discovery requested outweighs the likely benefits of the discovery. Thus, the Court granted in part the Motion for Protective Order by limiting the temporal scope of the discovery and quashing the discovery requests made to Debtors' customers.

## ANALYSIS

### A.    The General Scope of Discovery is Not Limited to Debtors' Current Management

Rule 26(b)(1) of the Federal Rules of Civil Procedure, made applicable to this contested matter pursuant to Rules 7026 and Rule 9014(c)(1), limits the scope of discovery to—

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[26]

Thus, the scope of the discovery is framed by the issues at stake in the action: here, whether the Court should order the appointment of a trustee under either Sections 1104(a)(1) or (a)(2).[27]

---

[26] Fed. R. Civ. P. 26(b)(1).

[27] *See Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 149 (M.D. Pa. 2017) ("To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings").

Under Section 1104(a)(1), the appointment of a trustee rests on a showing of "cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause."[28] In determining whether cause exists, court evaluate many factors including:

(1) Materiality of the misconduct;

(2) Evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors or customers;

(3) The existence of pre-petition voidable preferences or fraudulent transfers;

(4) Unwillingness or inability of management to pursue estate causes of action;

(5) Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor;

(6) Self-dealings by management or waste or squandering of corporate assets.[29]

The Court's inquiry is generally directed toward the conduct of "current management."[30] But "the court may consider both pre-petition and post-petition misconduct when deciding whether cause exists."[31] And, when the allegedly dishonest or incompetent prior management selected the current

---

[28] 11 U.S.C. § 1104(a)(1).

[29] *In re Sundale, Ltd.*, 400 B.R. 890, 900 (Bankr. S.D. Fla. 2009).

[30] *In re Marshall*, 653 B.R. 509, 517 (Bankr. N.D.N.Y. 2023) (noting "courts should not appoint an 1104 trustee if the underlying cause can be attributed only to past management"). *See also In re The 1031 Tax Group, LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007) ("When considering whether to appoint a trustee for cause, a court's focus is on the debtor's current management, not the misdeeds of past management").

[31] *Marshall*, 653 B.R. at 515. *See also The 1031 Tax Group*, 374 B.R. at 86 ("A court may consider both the pre-and postpetition misconduct of the current management when making the determination that "cause" exists for the appointment of a trustee").

management, the court should apply heightened scrutiny to ensure the new management is "free from the taint of prior management." [32]

Under Section 1104(a)(2), a court must order the appointment of a trustee "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate."[33] "Unlike § 1104(a)(1), § 1104(a)(2) does not require a finding of fault; the court may appoint a trustee even if no 'cause' exists."[34] Instead, when considering whether the appointment of a trustee is in the interest of creditors, any equity security holders, and other interests of the estate, a court is to evaluate –

(1) the trustworthiness of the debtor;

(2) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation;

(3) the confidence—or lack thereof—of the business community and of creditors in present management; and

(4) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment."[35]

Here, EverBank argues "Cause exists under § 1104(a)(1), including gross mismanagement, financial collapse, and loss of operational control, as demonstrated by the need for immediate third-party intervention to meet payroll, the lapse of critical insurance, and the improper handling of estate

---

[32] *The 1031 Tax Group,* 374 B.R. at 86. *See also Marshall*, 653 B.R. at 520 (noting that on a motion to appoint trustee a court may be called upon to consider whether current management is "free from the taint of prior management").

[33] 11 U.S.C. § 1104(a)(2).

[34] *Sundale*, 400 B.R. at 901.

[35] *In re 942 Penn RR, LLC*, 642 B.R. 89, 93 (Bankr. S.D. Fla. 2022).  *See also In re Sundale, Ltd.*, 400 B.R. 890, 899–901 (Bankr. S.D. Fla. 2009).

cash and collateral."[36] To do so, EverBank relies principally on the observations and conclusions of the State Court receiver, Mark Healy.[37] But that is not all. Since the appointment of Mr. Baum as CRO, EverBank has asserted it is necessary to ensure "the current management is free from the taint of prior management."[38]

EverBank also asserts the appointment of a trustee is required under Section 1104(a)(2) because "the totality of the circumstances shows that creditors, employees, and counterparties lack confidence in prior management, rehabilitation cannot proceed under existing control, and the cost of a trustee is far outweighed by the risk of operational collapse absent independent oversight."[39]

In this context, the Court is satisfied that a creditor who seeks the appointment of a trustee under both Sections 1104(a)(1) and (2) has the right to broad discovery into both pre- and post-petition events, even when a CRO has been appointed. The focus of the Court's inquiry when considering whether to appoint a trustee for cause is "the debtor's current management, not the misdeeds of past management."[40] And a debtor' appointment of outside

---

[36] Doc. No. 18, at 3.

[37] *See, e.g., Id.* at 18 ("Upon assuming control, the Receiver found the Debtors in a state of insolvency and operational distress").

[38] *See, e.g.,* Doc. No. 163, at 4 (quoting *The 1031 Tax Group*, 374 B.R. at 86).

[39] *Id.* at 3.

[40] *The 1031 Tax Group*, 374 B.R. at 86.

professionals to help manage its affairs may be evidence of the debtor acting responsibly.[41] But where, like here, a debtor's past management remains involved in operations, or the extent of the CRO's authority or independence is in question, the movant must be allowed a reasonable opportunity to investigate whether the current management is free from the taint of past management.

Here, EverBank has brought into question whether, despite there being no evidence of fraud, dishonesty, incompetence, or gross mismanagement by the CRO, the CRO is still tainted by his association with, or selection by, the Debtors' past manager, Emilia Giannakopoulos. Thus, despite her self-imposed removal from the management of the Debtors, at least for the scope of discovery, Ms. Giannakopoulos' pre-petition conduct remains highly relevant to whether the Court should direct the appointment of a trustee in this case. Accordingly, it is appropriate to deny the Debtors' request to limit discovery in connection with the Motion to Appoint Trustee to "the issue of whether the CRO has operated the Debtors in accordance with the Cash Flow budget." EverBank may conduct full discovery from the Debtors — including into prepetition events and customer, vendor, and employee relationships.

---

[41] *See In re BR Festivals LLC*, No. 14-10175, 2014 Bankr. LEXIS 1276, at *2 (Bankr. N.D. Cal. Mar. 28, 2014) (noting that act of seeking a CRO may be evidence of acting responsibly).

### B.   Everbank's Discovery Requests to Debtors' Customers Are Nevertheless Unduly Burdensome

Still, the Court's conclusion that Ms. Giannakopoulos' pre-petition conduct remains highly relevant to whether the Court should direct the appointment of a trustee in this case does not end the inquiry. Here, the Motion for Protective Order also seeks to "[p]rohibit EverBank from demanding any discovery from any of Debtors' customers."[42] Thus, despite having determined the relationship between past management and the Debtors' customers may be relevant to the appointment of a chapter 11 trustee, the Court must still assess whether the issuance of subpoenas to the Debtors' customers would impose an undue burden on the Debtors.[43]

Relevant information, which is otherwise discoverable, may be limited to avoid undue burden or expense.[44] Again, Rule 26 expressly provides that

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit.[45]

Whether a subpoena imposes an undue burden or expense depends on the specific facts of a case, and the interests served by demanding compliance must

---

[42] Doc. No. 149, at 2.

[43] *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 358 (D.D.C. 2018) ("Because the court finds that the requested testimony is relevant, the court must next assess whether compliance would impose an undue burden").

[44] *See Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 157 (M.D. Pa. 2017) (noting "the task of the trial court is to balance the clear relevance of the information against the burden on the defendant").

[45] Fed. R. Civ. P. 26(b)(1).

be balanced against the interests furthered by quashing it.[46] Factors

considered in determining whether there is an undue burden include:

> (1) whether the discovery sought is "unreasonably cumulative or duplicative;"
>
> (2) whether the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" and
>
> (3) whether the discovery sought is "proportional to the needs of the case," taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." [47]

Here, the Motion to Appoint Trustee alleges "commingling and diversion

of customer funds intended for specific tooling and refurbishment projects,

deterioration of customer relationships, and the risk that customers would

react adversely if prior management regained control."[48] Correspondingly,

EverBank seeks discovery from the Debtors' customers, including Acadiana

Plastics Molding, Inc. and Procter & Gamble, related to customer orders,

payments and deposits, and the Debtors' performance.[49] EverBank argues

---

[46] *See In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) ("Courts must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it"); *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017) ("Whether a subpoena imposes an 'undue burden' depends on the specific facts of the case and courts must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it").

[47] *See BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 358 (D.D.C. 2018) (quoting Fed. R. Civ. P. 26(b)(1) & (2)(C).

[48] Doc. No. 163, at 12.

[49] *See* Doc. Nos. 142 & 143.

"[d]iscovery from customers concerning these specific issues is directly relevant to both section 1104(a)(1) and (a)(2)."[50]

The Debtors contend "[d]emanding discovery from the Debtors' customers is a transparent attempt to sabotage and destroy Debtors' business," and "[i]t is absolutely vital to Debtors' business, Chapter 11 and reorganization that all of Debtors' customers be protected from any and all discovery."[51]

On the facts of this case, and in chapter 11 reorganization, the Court concludes discovery upon the Debtors' customers imposes an undue burden or expense that outweighs its likely benefit. Discovery as to alleged incidents of commingling and diversion of customer funds is highly probative to whether a court should direct the appointment of a chapter 11 trustee.[52] But much of the discovery that could be had of customers is probably cumulative or duplicative of discovery that could be – and likely already has been – had from the Debtors or the receiver.[53] And the requested discovery can probably be obtained less burdensomely from the Debtors or the receiver.[54]

---

[50] Doc. No. 163, at 12.

[51] Doc. No. 149, at 2.

[52] *See In re 942 Penn RR, LLC*, 642 B.R. 89, 93 (Bankr. S.D. Fla. 2022) (identifying the trustworthiness of the debtor and the confidence—or lack thereof—of the business community and of creditors in the debtor as factors weighing on whether the appointment of a trustee is in the interest of creditors, any equity security holders, and other interests of the estate).

[53] *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring courts limit the extent of otherwise allowable discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

[54] *Id.*

15

More, the Court is convinced that – on this record – discovery from the Debtors' customers is disproportionate to the needs of the case and the burden or expense of the proposed discovery outweighs its likely benefit. Creditor confidence is a factor that courts consider in determining whether to appoint a trustee under Section 1104(a)(2).[55] But lack of creditor confidence is not enough on its own to justify the appointment of a chapter 11 trustee.[56]

In stark contrast is what the Supreme Court once described as "the fundamental purpose of reorganization" – "to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources."[57] Here, permitting discovery from customers risks undermining customer relationships with and confidence in the Debtors. This could affect the success of the reorganization, the ultimate distribution to creditors, and the viability of dozens of jobs. Under these circumstances, the potential prejudice to the Debtors' prospects of reorganization outweighs the likely benefit of discovery from the Debtors' customers, especially since the discovery is probably cumulative and duplicative. Further mitigating against the

---

[55] *See In re Eletson Holdings Inc.*, 659 B.R. 426, 458 (Bankr. S.D.N.Y. 2024) (noting creditor confidence in present management is a factor courts consider in determining whether to appoint a chapter 11 trustee).

[56] *Id.* at 458-59 (rejecting the argument that a chapter 11 trustee should be appointed simply because most creditors want one).

[57] *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) (citing H.R. Rep. No. 95-595, at 220 (1977)). *See also In re Colortex Indus., Inc.*, 19 F.3d 1371, 1377 (11th Cir. 1994) (noting "the ultimate goal of Chapter 11 is to marshal those resources to provide the best possible opportunity for a successful rehabilitation which will ultimately redound to the benefit of all creditors").

discovery is that the Debtors have installed a CRO charged with preventing a reoccurrence of the alleged commingling and diversion of customer funds. Thus, the evidence of alleged commingling and diversion of customer funds is less valuable in proving the need to appoint a trustee.

EverBank has not shown that the Debtors' records are insufficient to prove its allegations that the Debtors misused customer funds prior to the bankruptcy filing or that they have done so after filing. Nor has EverBank shown that the need for discovery from the Debtors' customers is proportional to the issues at stake in the action. This is especially true when the prepetition operational dysfunction alleged has been addressed by installation of a CRO and any operational harm caused by the discovery will ultimately be borne by creditors. So, without more, a protective order is appropriate here. EverBank may not seek discovery from the Debtor's customers without first showing the information sought cannot be obtained from the Debtor's records.

Stuart J. Levine is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this Order.

17